IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARQUISE HARRIS, | ) |
| Plaintiff, | ) |
| v. | ) NO. 3:20-cv-01110 |
| TDOC COMISSIONER TONY PARKER, et al., | ) JUDGE RICHARDSON |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a pro se complaint under 42 U.S.C. § 1983 (Doc. No. 1) filed by Plaintiff Marquise Harris, an inmate of the Morgan County Correctional Complex (MCCX) in Wartburg, Tennessee. Plaintiff attempted to pay the civil filing fee, but the Clerk's Office returned the check because it was written in an insufficient amount. He thereafter filed an application for leave to proceed as a pauper, without prepaying fees and costs. (Doc. No. 3.)

**I. PAUPER STATUS**

A prisoner may not file a civil action in forma pauperis (IFP) in district court if he has, "on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). Plaintiff has previously filed at least three actions in district court that were dismissed on one of the grounds listed in Section 1915(g). *See Harris v. TDOC Comm'r, et al.*, Case No. 3:16-CV-594 (E.D. Tenn. Sept. 20, 2017) (dismissed for failure to state a claim); *Harris v. TDOC Comm'r, et al.*, Case No. 3:16-CV-600

(E.D. Tenn. Jan. 18, 2017) (dismissed as malicious); *Harris v. TDOC Comm'r, et al.*, Case No. 3:16-CV-615 (E.D. Tenn. Nov. 1, 2016) (dismissed as malicious). In light of these prior dismissals, Plaintiff is a "three-striker" who may only proceed as a pauper in this action if he is in "imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To fall within the statutory exception to the "three-strikes" rule, the danger Plaintiff is facing must be a "real and proximate" threat of serious physical injury that existed at the time the complaint was filed. *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (citing, e.g., *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003)). Under this standard, Plaintiff must "allege[] facts from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that [he] was under an existing danger" when he filed the complaint. *Vandiver v. Prison Health Servs., Inc.*, 727 F.3d 580, 585 (6th Cir. 2013) (internal quotation marks and citation omitted). In making this determination, the Court must construe the complaint liberally, as "the imminent danger exception is essentially a pleading requirement subject to the ordinary principles of notice pleading." *Id.* Still, Plaintiff's allegations "must not be irrational, incredible, or speculative, and must describe with sufficient detail why [he] is in imminent danger." *Lapine v. Waino*, No. 17-1636, 2018 WL 6264565, at *2 (6th Cir. Oct. 11, 2018) (citing *Vandiver*, 727 F.3d at 585).

Plaintiff alleges that, on October 17, 2020, he was informed by Cpl. Honey that the prison office had received a call reporting that Plaintiff was in danger of being stabbed to death by gang-affiliated inmates in his housing unit. (Doc. No. 1 at 3.) Plaintiff told Honey that he had heard that a "kill order" had been placed by the Gangster Disciples gang after he had been in an altercation with a gang member, but that he was not aware of any specific threat from any particular inmate. (*Id.*) Plaintiff requested protection, but after Honey consulted with his supervisor, it was

2

determined that no protection could be offered due to the lack of information regarding the threat, and Plaintiff was returned to his housing unit. (*Id.*)

Plaintiff alleges that there is a history of gang-related, violent altercations in his housing unit, which consists of two buildings, and that Honey was aware of that history because he had "witnessed numerous stabbing incidents while on duty." (*Id.* at 4.) In fact, Plaintiff himself was previously the victim of a stabbing in that unit. (*Id.*) On October 12, 2020, Plaintiff was attacked by three inmates with knives. (*Id.* at 4–5.) Prison staff did not intervene for several minutes, but ultimately used mace to subdue all inmates involved in the altercation, though one of Plaintiff's assailants escaped apprehension. (*Id.* at 5.) Plaintiff was taken to the hospital for treatment of his stab wounds. (*Id.*) Two inmates identified as his attackers were issued disciplinary reports and placed in segregation pending an investigation. (*Id.* at 6.)

When Plaintiff returned from the hospital, he was placed in quarantine. He expressed concern that his attacker who had evaded disciplinary segregation would again attack him if he was returned to his housing unit. (*Id.*) Although he was supposed to have been interviewed by Internal Affairs Officer Foster, that interview did not occur, even after Plaintiff independently requested to speak with Foster. (*Id.* at 7.) Plaintiff filed a grievance against Honey and the second shift supervisor on October 22, 2020, alleging their failure to protect him. (*Id.*)

On October 24, Plaintiff learned the names and inmate numbers of all three of his assailants, and further learned that the "kill order" remained in place and would be carried out if he were returned to the housing unit. (*Id.* at 7–8.) Plaintiff informed the officer on duty in the unit where he was quarantined but did not get a response. (*Id.* at 8.)

Finally, on November 3, 2020, a female officer came to Plaintiff's cell door and informed him that she had filed a protective services inquiry and that someone should come to his cell to

3

follow up with him. (*Id.* at 9.) But nobody followed up on Plaintiff's request for protective services, and on November 4, 2020, an officer came to his cell door and told him to prepare for his move back to his former housing unit. (*Id.*) Plaintiff told the officer that his attacker, inmate Carroll, was housed in that unit and would attack Plaintiff again if he returned to the unit. (*Id.*) But the officer informed Plaintiff that if he did not pack up his belongings and move when directed, he would be written up for refusing a cell assignment. (*Id.*)

When Plaintiff arrived back in the housing unit on November 4, he was again attacked by inmate Carroll and another knife-wielding inmate but managed to defend himself from significant injury. (*Id.* at 9–10.) Plaintiff and Carroll were subsequently segregated, but no investigation was conducted, and Plaintiff was denied grievance forms and received no response to his previously filed grievances over the danger he faced in his housing unit. (*Id.* at 10–11.) He alleges that "at this moment he's living in fear for his life that MCCX officials will continue to disregard this issue and order that he continue to be housed around these inmates and other inmates of their affiliation, creating an ongoing threat to his safety in violation of his right under the Eighth Amendment." (*Id.* at 11.)

In the wake of the November 4 knife attack against Plaintiff, prison officials have continued to request that he consent to a return to the housing unit despite the threat he faces there, stating there is nowhere else to house him except segregation. (*Id.* at 11, 13.) Plaintiff and several other inmates overheard a conversation Warden Mike Parris, Associate Warden Stacy Oakes, and Unit Manager Robertson were having near his cell, in which Robertson allegedly stated that he would talk to Internal Affairs Officer Foster "to see if he can create any disciplinary infractions against plaintiff and issue a disciplinary report, so they can use the disciplinary report as a way to force plaintiff to move back to either of the two housing units where these inmates are and let them kill

4

plaintiff, [so that] MCCX officials don't have to worry about affording plaintiff any protection or dealing with his lawsuits." (*Id.* at 12.) Plaintiff was subsequently informed that he had been written up for assault on inmate with a weapon and possession of a deadly weapon. (*Id.* at 13.) An inmate advisor "presented plaintiff an offer from the disciplinary board chairperson which consisted of plaintiff pleading guilty to both infractions and receiving 35 days punitive segregation then being moved back to the housing unit where the inmates that assaulted him on 10-28-20 and 11-4-20 were housed." (*Id.*) Plaintiff sought a continuance of his disciplinary hearing but was told to prepare to move back to the housing unit, which he again refused and requested protection from, on account of the threat of harm he faces in that unit. (*Id.*)

The Court finds these allegations sufficient to establish that Plaintiff was in "imminent danger of serious physical injury" at the time he filed his Complaint, and that he is therefore not precluded from proceeding IFP under 28 U.S.C. § 1915(g). Because it is apparent from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, that application (Doc. No. 3) is **GRANTED**.

Pursuant to 28 U.S.C. §§ 1915(b) and 1914(a), Plaintiff is nonetheless assessed the $350 civil filing fee. The warden of the facility in which Plaintiff is currently housed, as custodian of Plaintiff's trust account, is **DIRECTED** to submit to the Clerk of Court, as an initial payment, the greater of: (a) 20% of the average monthly deposits to Plaintiff's credit at the jail; or (b) 20% of the average monthly balance to Plaintiff's credit for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1). Thereafter, the custodian shall submit 20% of Plaintiff's preceding monthly income (or income credited to Plaintiff for the preceding month), but only when the balance in his account exceeds $10. *Id.* § 1915(b)(2). Payments shall continue until the $350 filing fee has been paid in full to the Clerk of Court. *Id.* § 1915(b)(3).

5

Case 3:20-cv-01110   Document 5   Filed 01/22/21   Page 5 of 7 PageID #: 40

The Clerk of Court **MUST** send a copy of this Order to the warden of the facility where Plaintiff is currently housed to ensure compliance with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian must ensure that a copy of this Order follows Plaintiff to his new place of confinement, for continued compliance with the Order. All payments made pursuant to this Order must be submitted to the Clerk of Court for the United States District Court for the Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

## II. VENUE

Under 28 U.S.C. § 1391(b), venue is proper in: (1) a judicial district where any defendant resides, if all defendants reside in the same state; (2) a district where a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the property in question is situated; or (3) if there is no other district in which the plaintiff may bring the action, a district where any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b). A court considering the issue of venue must initially determine whether the case falls within one of these three categories. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 56 (2013). "If it does, venue is proper," though the court in its discretion may still dismiss or transfer the case in the interest of justice and for the sake of convenience of parties and witnesses under 28 U.S.C. § 1404(a), "a codification of the doctrine of *forum non conveniens*." *Id.* at 56, 60; *see also K-Tex, LLC v. Cintas Corp.*, 693 F. App'x 406, 408–09 (6th Cir. 2017). "[I]f it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)," *Atl. Marine Const. Co.*, 571 U.S. at 56, which prescribes this outcome for "a case laying venue in the wrong division or district." 28 U.S.C. § 1406(a).

This case falls under the first Section 1391(b) category above, as all Defendants reside in this state. Venue in this district is not improper because Commissioner Tony Parker resides here, but all other Defendants appear to reside in Morgan County, Tennessee, where they are employed as MCCX officials. (*See* Doc. No. 1 at 3.) Morgan County lies within the Eastern District of Tennessee. 28 U.S.C. § 123(a)(1). Moreover, the Complaint is solely concerned with alleged wrongdoing that occurred at MCCX, where Plaintiff remains incarcerated. "Although a plaintiff's choice of forum is generally given deference, that choice may be defeated, especially in cases when the plaintiff has little or no connection to the chosen forum," as here. *Burnett v. Caruso*, No. 10-cv-10749, 2010 WL 1609256, at *2 (E.D. Mich. Apr. 19, 2010). In light of these circumstances, the Court finds that transfer to the Eastern District is warranted for the convenience of parties and witnesses, in the interest of justice, pursuant to 28 U.S.C. § 1404(a).

Accordingly, the Clerk is directed to **TRANSFER** Case No. 3:20-cv-01110 to the United States District Court for the Eastern District of Tennessee, Northern Division at Knoxville. Plaintiff must send any future filings in this case to the Eastern District of Tennessee.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE